**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Jane Doe | Case No: |
| Plaintiff, | |
| v. | Judge: |
| American Airlines, Inc. and Brett Billins, | |
| Defendants. | |

**COMPLAINT**

Plaintiff, Jane Doe, through her attorneys, Romanucci & Blandin, LLC, complains against Defendants, American Airlines, Inc. and Brett Billins, as follows:

**INTRODUCTION**

1. Jane Doe was sexually assaulted by Brett Billins while seated beside him on American Airlines Flight 6046 departing Chicago O'Hare International Airport (ORD) and arriving at Dayton International Airport (DAY) on June 27, 2024. Although visibly intoxicated and stumbling onto the plane, Billins was still permitted to board, and seated in seat 8B, directly across the aisle from Jane Doe in the exit row.

2. During the flight, Billins reached over while Jane Doe was turned away, and grabbed and squeezed her breast, then proceeded to move his hand down to her stomach. Jane Doe screamed at Billins to, "Please stop doing that!" The passengers around Jane Doe heard her scream and turned around to see what was going on. Jane Doe was seated in 8C and the man sitting directly behind her in 9C even tapped her

1

on the shoulder to see if she was alright.

3. After the plane landed, the incident was reported to the Dayton Airport Police who took Billins into law enforcement custody after Jane Doe shared that she wanted to press charges.

4. Billins was eventually convicted of simple assault and sentenced by the Court for his actions in *United States v. Billins*, No. 3:25-CR-17 (S.D. Ohio Jan. 14, 2026) (judgment entry).

5. After the incident, no one from American Airlines contacted Jane Doe. The Dayton Police had to prompt the American Airlines counter manager to reach out to her. When the counter manager eventually called Jane Doe, he told her that no one from American Airlines had informed him of the incident. During that call, the manager also acknowledged that there had been a breakdown in communication between him and the airline staff.

6. In a July 22, 2024, email, an American Airlines representative admitted that Billins had been acting "inappropriately" on the flight.

7. American Airlines' conduct, including overserving an already intoxicated passenger, ignoring the safety risks he posed to Jane Doe, and failing to take meaningful steps to ensure Jane Doe's safety, reflects a broader culture of indifference to in-flight sexual assaults. Instead of prioritizing passenger safety, American Airlines allowed Billins to enter the flight while he posed a safety risk to other passengers, including Jane Doe. This lawsuit seeks to hold both Billins and American Airlines accountable for the harm inflicted on Jane Doe and the systemic

failures that enabled it.

## THE PARTIES

8.    Jane Doe resides in Springfield, Ohio.

9.    Defendant American Airlines is a corporation duly formed and existing under the laws of the State of Texas with a principal place of business located in Fort Worth, Texas.

10.    Defendant Brett Billins resides in Denver, Colorado.

## JURISDICTION AND VENUE

11.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1332 because there exists complete diversity of citizenship of the parties and the amount in controversy exclusive of interest and costs, exceeds $75,000.

12.    Venue is proper in this district pursuant to 28 U.S.C. §1391, in that a substantial part of the incident giving rise to the action originated and took place within the Northern District of Illinois. Venue is proper in this district pursuant to 28 U.S.C. §1391, in that Defendant American Airlines has offices and transacts business within the Northern District of Illinois, operating regular commercial flights out of Terminal 3 at Chicago O'Hare International Airport. Defendant American Airlines regularly and systematically conducts business, solicits business, and earns substantial revenue from business conducted within this district.

## FACTUAL ALLEGATIONS

13.    Upon information and belief, Defendant American Airlines was and is a common carrier engaged in the business of transporting passengers for hire by air and operates an extensive international and domestic network of flights.

14. Upon information and belief, Defendant American Airlines employs a flight crew, gate agents, and other airline staff, tasked with ensuring the safe and secure operation of their flights, as well as the safety and well-being of their passengers.

15. On June 27, 2024, Defendant American Airlines operated and controlled a flight departing around 7:30 p.m. from O'Hare International Airport (ORD) to Dayton International Airport (DAY).

16. On June 27, 2024, Jane Doe was a fare-paying passenger aboard this American Airlines flight.

17. On June 27, 2024, Jane Doe was assigned to seat 8C on Flight 6046.

18. On June 27, 2024, Billins had difficulty walking straight as he boarded the flight. Despite his visible impairment, Defendant American Airlines permitted Billins to board and seated him in 8B, which was an exit row.

19. On June 27, 2024, while Jane Doe was listening to music and facing away from Billins, he groped her left breast and squeezed it and then proceeded to trail his hand down to her stomach—all without consent.

20. On June 27, 2024, Jane Doe screamed at Billins to "Please stop doing that!"

21. Several passengers turned around to see what was going on after Jane Doe screamed.

22. Another unidentified passenger seated behind Jane Doe in row 9C, tapped her on the shoulder to see if she was okay.

23. The flight attendant was serving drinks and snacks only a few rows in

4

front of Jane Doe when the incident occurred. Despite that proximity, no one responded until Jane Doe reported the assault and asked that the pilot be notified.

24. The pilot subsequently notified the Dayton Airport Police. When Jane Doe disembarked from the airplane, officers immediately asked whether she wanted to press charges. She responded yes.

25. On June 27, 2024, airport authorities immediately escorted Billins off the plane, detained him, and interviewed the witness who was seated in seat 9C.

26. On January 20, 2026 Billins was sentenced to probation for 5 years and fined $5,000 after pleading guilty to assault.

27. As a direct result of Billins' assault and American Airlines' failure to protect her, Jane Doe suffered significant emotional distress, humiliation, fear, and ongoing trauma.

### American Airlines was on Notice Regarding the Prevalence of Sexual Assaults on Airplanes

28. Long before Jane Doe's assault, the issue of in-flight sexual assault was a well-known concern within the airline industry, even if largely hidden from the general public.

29. In 2018, the FBI issued a public advisory in which FBI Special Agent Caryn Highley explained that "[t]here is a perception on an airplane that you're in a bubble of safety," but that perception is false.

30. The same advisory noted a substantial increase in the number of reported in-flight sexual assaults.

31. Reported incidents of in-flight sexual assault represent only a small

fraction of the actual number of assaults, as many victims choose not to report due to fear, shame, or concern about causing a disturbance during the flight.

32. To address crimes occurring aboard aircrafts, the FBI assigns Airport Liaison Agents (ALAs) to nearly 450 U.S. aviation facilities.

33. ALAs are responsible for responding to in-flight crimes, including sexual assault, which fall within the FBI's special investigative jurisdiction.

34. At major airports, multi-agency task forces are also in place to investigate a range of criminal offenses, including sexual assaults on board commercial flights.

35. Sexual assaults aboard aircraft are most often perpetrated by men against women.

36. More than half of sexual assaults onboard aircraft are perpetrated by persons who are intoxicated.

37. Victims are often physically trapped and unable to easily remove themselves from the situation.

38. Offenders are known to frequently exploit the likelihood that victims may remain silent out of embarrassment or fear of causing a disruption.

39. American Airlines knew that 67% of sexual assaults on aircraft involve alcohol and/or drugs.

**American Airlines' Systematic and Ongoing Failure to Prevent and Respond to Sexual Assaults**

40. American Airlines has a documented history of disregarding victims while enabling known or suspected sexual predators.

6

41. American Airlines claims it puts safety first. Its Standards of Business Conduct promise to "protect the health and safety of our colleagues and customers." Employees are told to "perform your job with the highest regard for safety" and to report anything that might compromise it. In practice, the airline does the opposite. It repeatedly ignores the very standards it claims to uphold.

42. In reality, American Airlines has repeatedly failed to take allegations of sexual assault seriously.

43. On **June 15, 2016**, M.W., a young girl flying alone as an unaccompanied minor on an American Airlines flight, was seated next to an adult man despite numerous open seats in the surrounding area. During the flight, the man touched M.W.'s groin area, causing long-term emotional trauma that American Airlines failed to prevent.[1]

44. Upon information and belief, on **June 29, 2016**, a female passenger traveling from Charlotte, NC to Newark, NJ was seated next to a man who groped her while he was pretending to be asleep under his coat.

   a. The passenger reported the conduct to a flight attendant, but no action was taken by the staff to protect the female passenger after the incident occurred.

   b. American Airlines staff acknowledged the complaint and opened a case, but pursued no further resolution.

   c. American Airlines maintains sole possession of the documents related

---

[1] *R.M. v. Am. Airlines, Inc.,* 338 F. Supp. 3d 1203, 1204 (D. Or. 2018)

to this incident.

45.     On **June 16, 2017**, Aubrey Lane was raped in the lavatory of an American Airlines flight after she repeatedly asked flight crew to intervene when a male passenger, who had been overserved alcohol, began sexually harassing her.[2]

    a.  Despite her repeated pleas, the crew failed to act. The harassment escalated into sexual assault, and American Airlines did nothing to prevent or stop it.

    b.  After the assault, American Airlines dismissed Lane's claims as a "nuisance" and offered her $5,000 in compensation.

    c.  Ultimately, Lane was forced to bring a lawsuit. American Airlines did not resolve the matter until the eve of trial in January 2025, when it finally agreed to settle.

46.     On **November 9, 2018**, Elida Parish was sexually assaulted by an intoxicated passenger who was overserved alcohol by American Airlines employees.[3]

    a.  Despite spilling wine on a female flight attendant while giving her a hug, the perpetrator was continuously served up to three drinks at a time.

    b.  Even after he was reported for being intoxicated and groping the

---

[2] *Aubrey Lane: American Airlines Lawsuit Sexual Harassment*, The Guardian (Nov. 3, 2018), https://www.theguardian.com/us-news/2018/nov/03/aubrey-lane-american-airlines-lawsuit-sexual-harassment.

[3] Vanessa Brown, Eline de Bruijn & Frank Heinz, *American Airlines Sued for $6 Million After Passenger Says She Was Sexually Assaulted on a Flight by a Drunken Passenger*, NBC 5 Dallas-Fort Worth (Aug. 28, 2019), https://www.nbcdfw.com/news/local/american-airlines-sued-for-6-million-after-passenger-says-she-was-sexually-assaulted-on-a-flight-by-a-drunken-passenger/207663/; *Parish v. Am. Airlines, Inc.,* No. 4:19-cv-00653-A (E.D. Tenn. Apr. 21, 2019

woman, American Airlines continued to serve him alcohol.

c. When the woman reported that she was being sexually assaulted by her seatmate, they suggested that she pretend to be asleep.

d. When the woman returned to her seat and pretended to be asleep, she was sexually assaulted again.

47. **In 2021**, a 17-year-old female was sexually assaulted by a passenger on an American Airlines flight. [4]

a. The high school junior was flying alone and American Airlines sat her next to the 6'2", 220 pound, man before he assaulted her. The victim immediately reported the assault, and the defendant pled guilty to the charge for sexual contact without consent on July 26, 2021.

48. On **July 29, 2022**, another female passenger was sexually assaulted on an American Airlines flight while she was sleeping. The victim woke up from her sleep on the overnight flight to find the Defendant with his hands and face under her clothes and on her body. [5]

49. On **August 26, 2022**, Chaya Schwarcz, traveling from North Carolina to New Jersey, was on an American Airlines flight when she woke up to the man sitting next to her sexually assaulting her. [6]

---

[4] Press Release, U.S. Dep't of Justice, E. Dist. of N.C., Fayetteville Man Sentenced for Sexual Assault Aboard Flight (May 11, 2022), https://www.justice.gov/usao-ednc/pr/fayetteville-man-sentenced-sexual-assault-aboard-flight.

[5] Press Release, U.S. Dep't of Justice, E. Dist. Of Pa., West Chester Man Sentenced for Abusive Sexual Contact on an Aircraft (Nov. 1, 2024), https://www.justice.gov/usao-edpa/pr/west-chester-man-sentenced-abusive-sexual-contact-aircraft.

[6] *Schwarcz v. American Airlines, Inc.*, No. 2:24-cv-08551-KSH-AME (D.N.J. Aug. 19, 2024).

a. The man forced her hand onto his penis and penetrated her with his fingers while she was asleep.

b. The man also partially penetrated her with his penis before she pushed him away.

c. Despite the visibility of the perpetrator's actions on that flight, American Airlines employees failed to intervene and stop the ongoing assault from continuing.

50. **On January 7, 2023**, Ryan Coffey sexually assaulted a 14-year-old girl, after giving her alcohol during the American Airlines flight from Charlotte, NC to San Diego, CA. [7]

51. On **September 25, 2023**, Renee Solofra was sexually assaulted by a heavily intoxicated male passenger who was overserved alcohol by American Airlines employees.[8]

a. The passenger had 3 alcoholic beverages before entering the flight.

b. The passenger began repeatedly touching Renee without consent soon after sitting down next to her on the plane.

c. The passenger was visibly intoxicated and fumbled for his card to purchase 2 alcoholic beverages from the drink cart.

d. The flight attendant witnessed the passenger's behavior and proceeded to serve him, nonetheless.

---

[7] https://www.justice.gov/usao-sdca/pr/san-diego-man-pleads-guilty-sexual-abuse-14-year-old-girl-airplane

[8] Complaint, *Solofra v. American Airlines, Inc.*, No. 125-cv-11607, ECF No. 1 (N.D. Ill. Sept. 24, 2025).

e. After being served, the passenger continued to touch Renee without consent. The passenger pulled Renee closer to him by her neck and eventually groped her breast and squeezed it twice.

f. No flight attendants intervened during any of the interactions.

52. **Before April 2024**, a female passenger was sexually assaulted by Cherian Abraham during an American Airlines flight.

a. Upon information and belief, this passenger had reported Cherian Abraham to American Airlines.

b. Despite this knowledge, American Airlines continued to allow Cherian Abraham to continue flying without restriction.

53. On **April 24, 2024**, Barbara Morgan was sexually assaulted by Cherian Abraham, who had a documented history of assaulting other passengers.[9]

a. Barbara was assigned a middle seat directly next to her assailant and he began to rub his arm against her, attempting to touch her breasts

b. Her assailant then placed his hand on Barbara's upper thigh, slid it up toward her vagina, and fondled her genitals at which point Barbara yelled at him to stop

c. American Airlines staff did not intervene at any point. Barbara reported the assault to the American Airlines gate agent upon exiting the plane and they told her there was nothing they could do.

d. American Airlines continued to allow Cherian Abraham to fly without

---

[9] *Morgan v. American Airlines Inc.*, 3:25-cv-03626, (N.D. Cal. Apr 24, 2025), ECF No. 1.

any restriction.

54. **After April 2024**, Cherian Abraham assaulted a third female passenger during another flight.

    a. American Airlines was again notified of this.

    b. Cherian Abraham was prosecuted for his repeated sexual assaults of female passengers aboard American Airlines flights.

55. In another disturbing incident on May 27, 2024, Neel Elsherif was subjected to a male passenger openly masturbating beside her for over an hour during an American Airlines flight.

    a. When Elsherif sought help from American Airline staff, she was met with a shocking dismissal: the flight attendant stated "men just do stuff like that." [10]

56. American Airlines has shown a disturbing pattern: it minimizes, excuses, and fails to act on reports of sexual misconduct.

57. Furthermore, American Airlines has demonstrated a pattern and practice of failing to monitor the cabins of their aircraft to prevent sexual assault.

## COUNT I
## NEGLIGENCE
### (Against Defendant American Airlines, Inc.)

58. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

---

[10] Charlotte Phillip, *CEO Suing American Airlines, Claiming Flight Attendant Dismissed Her When Man Allegedly Masturbated Near Her*, People (Mar. 29, 2025), https://people.com/ceo-suing-american-airlines-claiming-flight-attendant-dismissed-her-when-man-allegedly-masturbated-near-her-11705696.

59. At all relevant times, American Airlines was a common carrier under Illinois state law.

60. At all relevant times, American Airlines was in the business of transporting the general public.

61. At all relevant times, American Airlines' staff, including all in-flight crew and airport personnel, was acting within the scope of their employment with American Airlines.

62. At all relevant times, Jane Doe believed, based on the terms and representations of her contract with American Airlines, that the airline would prioritize her safety, comfort, and well-being during the flight.

63. At all relevant times, American Airlines maintained a regular place of business at ORD and other airports for the purpose of transporting passengers.

64. At all relevant times, American Airlines advertised its services to the general public, including residents of Illinois.

65. At all relevant times, American Airlines charged standard fees for its services.

66. At all relevant times, American Airlines maintained regular scheduled departures, fixed routes, and held appropriate transportation licenses in the United States.

67. As a common carrier, American Airlines owed a heightened duty of care to ensure the safety and well-being of its passengers.

68. That duty required American Airlines and its employees to exercise the

highest degree of care and vigilance to protect Jane Doe from foreseeable harm, including assaults by other passengers.

69. At all relevant times, American Airlines had a duty not to allow intoxicated passengers aboard its flights.

70. At all relevant times, American Airlines had a duty to monitor passengers who were causing a disturbance or were reasonably likely to cause a disturbance.

71. At all relevant times, American Airlines had a duty to protect passengers, including Jane Doe, from assault and other harmful conduct by fellow passengers while aboard flights.

72. Flight attendants are positioned throughout the cabin to help ensure passenger safety, including monitoring for signs of distress or misconduct.

73. American Airlines knew or should have known that passengers, including Jane Doe, were at risk of sexual assault by obviously intoxicated passengers, yet failed to take reasonable precautions.

74. Defendant American Airlines had a duty pursuant to 14 C.F.R. § 121.575 to refrain from allowing any person who appeared intoxicated to board its aircraft and to refrain from serving alcoholic beverages to any passenger who appeared intoxicated.

75. Defendant American Airlines violated 14 C.F.R. § 121.575 by allowing Billins to board Flight 6046 despite the fact that he appeared intoxicated. Specifically, Billins had difficulty walking straight as he entered the aircraft, presenting visible

14

signs of intoxication before departure. Upon information and belief, American Airlines further violated 14 C.F.R. § 121.575 by serving or continuing to serve alcoholic beverages to Billins despite his apparent intoxication. As a result, American Airlines increased the foreseeable risk of harm to Jane Doe and other passengers.

76. American Airlines breached its duty of care to protect its passengers by:

a. Failing to take action to prevent Billins from boarding or being seated next to other passengers despite his apparent and significant intoxication;

b. Failing to monitor and control the behavior of Billins as an obviously intoxicated passenger;

c. Failing to protect Jane Doe from foreseeable harm by a visibly impaired passenger seated directly across the aisle from her;

d. Failing to adequately supervise flight crew who neglected their obligation to monitor passenger interactions;

e. Assigning Jane Doe to a seat next to a visibly intoxicated passenger without warning or opportunity for reassignment;

f. Failing to train flight crew to appropriately respond to signs of passenger distress, including Jane Doe's audible verbal objection;

g. Failing to act on established guidance from aviation authorities regarding prevention of in-flight sexual assault;

h. Failing to develop or enforce internal policies to identify, track, and restrict passengers who pose a risk of assault; and

i. Failing to take appropriate action after Jane Doe reported the assault, including taking immediate steps to protect Jane Doe from Billins or relocate her.

77. American Airlines' acts and omissions enabled Billins' assault of Jane Doe and demonstrate a disregard for Jane Doe's safety, well-being, and rights.

78. Jane Doe suffered severe emotional distress as a direct result of American Airlines' failure to act on known risks, its indifference to her complaints, and its mishandling of the assault.

79. American Airlines knew, or should have known, that allowing Billins to board posed a danger to passengers, including Jane Doe.

80. American Airlines knew, or should have known, that dismissing Jane Doe's report as they did would inflict further psychological harm.

81. Had American Airlines exercised the care required of a common carrier, it could have prevented the assault.

82. As a direct and proximate result of American Airlines' negligence, including failure to monitor Billins, to supervise the flight, and to appropriately respond after Jane Doe reported the assault, Jane Doe was sexually assaulted and suffered ongoing emotional and psychological trauma.

**COUNT II**
**VIOLATION OF THE GENDER VIOLENCE ACT**
**(Against Defendants American Airlines, Inc. and Brett Billins)**

83. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

16

84. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

85. The Illinois Gender Violence Act ("IGVA") provides a civil cause of action against any "person" who personally commits, encourages, or assists gender-related violence. 740 ILCS 82/10.

86. At all relevant times, Defendant American Airlines, Inc. acted through its agents and employees, including gate agents and flight attendants, who were acting within the scope of their employment and operational authority aboard Flight 6046.

87. Under Illinois law, a corporate entity may be held liable under the Illinois Gender Violence Act when it personally encourages or assists gender-related violence through the conduct of its employees. See *Gasic v. Marquette Management, Inc.*, 2019 IL App (3d) 170756. Subsequent amendments to the Act confirmed this interpretation.

88. On June 27, 2024, American Airlines employees affirmatively assisted and encouraged gender-based violence against Plaintiff through specific operational conduct, including seating decisions and failure to interrupt and/or prevent an assault.

89. Prior to boarding at Chicago O'Hare International Airport, American Airlines personnel permitted Brett Billins to board Flight 6046 despite visible intoxication.

90. American Airlines employees assigned Plaintiff, a female traveling

alone, to a seat next to Billins, a visibly intoxicated male passenger, thereby placing her in a confined and coercive physical environment, in close proximity to a passenger who was a danger to others.

91. After Billins sexually assaulted Jane Doe, Plaintiff screamed, telling him to stop, creating an audible disturbance within the cabin.

92. Despite the audible and visible disturbance and visible distress, no American Airlines employee separated the passengers or otherwise attempted to interrupt and/or prevent Billins' conduct.

93. By maintaining Plaintiff's forced proximity to her assailant, and failing to intervene during or before the assault, American Airlines employees affirmatively facilitated and intensified the gender-based violence inflicted on Plaintiff.

94. Alcohol was a central instrumentality of the assault. American Airlines' continued service of alcohol to Billins was an affirmative operational act that directly increased the likelihood, severity, and duration of the sexual assault.

95. These actions constitute "assistance" and "encouragement" within the meaning of the IGVA and go well beyond mere nonfeasance or passive acquiescence.

96. American Airlines, through its employees, undertook these actions with full knowledge of the well-documented risk of in-flight sexual assaults perpetrated by intoxicated passengers, including prior incidents aboard its own aircraft and industry-wide warnings.

97. American Airlines' assistance and encouragement began in Illinois, where Billins was permitted to board while intoxicated and Plaintiff was seated

beside him on a flight originating from Chicago.

98.     Defendants subjected Plaintiff to gender-related violence as defined by the IGVA, including nonconsensual physical intrusion of a sexual nature under coercive conditions, committed at least in part because of her gender.

99.     As a direct and proximate result of American Airlines' encouragement and assistance of gender-based violence, Jane Doe suffered severe emotional distress, humiliation, fear, and lasting psychological trauma.

100.    Defendant American Airlines is liable under the Illinois Gender Violence Act for the acts of its employees who, while acting within the scope of their authority, personally encouraged and assisted the gender-based violence inflicted upon Plaintiff.

101.    Defendant Brett Billins is liable under the Illinois Gender Violence Act for his acts of forcefully groping Jane Doe's breast, squeezing it, and trailing his hand down her stomach.

102.    Plaintiff seeks all relief available under the IGVA, including compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs.

## COUNT III
### BATTERY
**(Against Defendant Brett Billins)**

103.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

104.    Defendant Brett Billins intended to cause harmful contact with Jane

19

Doe's breast and torso when he reached over and squeezed Jane Doe's breast and slid his hand down her stomach.

105. Billins did cause unwanted and harmful contact by reaching over to Jane Doe, groping Jane Doe's breast, squeezing it, and sliding his hand down her stomach.

106. Jane Doe did not consent explicitly or implicitly to this unwanted touching and was facing away from Billins when he reached across the aisle and groped her.

107. Plaintiff suffered severe emotional distress, including but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame as a direct and proximate result of Defendant Billins' conduct.

## COUNT IV
## FRAUDULENT CONCEALMENT
### (Against Defendant American Airlines Inc.)

108. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

109. Prior to June 27, 2024, Plaintiff bought a ticket to fly American Airlines Flight 6046 departing Chicago O'Hare International Airport (ORD) and arriving at Dayton International Airport (DAY).

110. In connection with the sale of airline tickets to the public, American Airlines affirmatively represents—through its website, ticketing process, Conditions of Carriage, marketing materials, and onboard safety messaging—that it prioritizes passenger safety, enforces alcohol-service limits, monitors passenger conduct, and

20

intervenes when safety risks arise.

111. For example, in a 2023 Sustainability Report by American Airlines claimed: *"Everyone at American has a role to play in ensuring that our people, customers and assets remain safe."*[11] American represents that: *"We are in business to provide safe, dependable and comfortable air transportation to our customers..."*

112. These representations were made prior to Plaintiff's flight, including during the ticket-purchase process and again during pre-boarding and onboard announcements, and were intended to induce passengers, including Plaintiff, to purchase tickets and board American Airlines flights.

113. Having chosen to speak on matters of passenger safety, alcohol service, and onboard monitoring, American Airlines had a duty to disclose material facts necessary to make those representations not misleading.

114. At the time of Plaintiff's flight, American Airlines possessed non-public, material information concerning its own operations, including internal incident reports, passenger complaints, crew reports, and safety data, reflecting that:

    a. In-flight sexual assaults aboard American Airlines aircraft had occurred repeatedly and with increasing frequency;

    b. A substantial percentage of those assaults involved intoxicated passengers;

    c. American Airlines employees, including flight attendants, regularly overserved alcohol and permitted visibly intoxicated passengers to

---

[11] American-Airlines-Sustainability-Report-2023.pdf

board and remain onboard; and

d. American Airlines failed to adequately monitor intoxicated or disruptive passengers during flights, despite internal policies purporting to require such monitoring.

115. These facts were uniquely within American Airlines' knowledge and control and were not disclosed to Plaintiff or other passengers during the ticket-purchase process, boarding process, or flight.

116. American Airlines concealed these material facts by continuing to promote its flights as safe and well-monitored while omitting its known, airline-specific history of alcohol-related assaults, internal complaints, and systemic enforcement failures.

117. American Airlines intentionally concealed this information to protect its corporate reputation, avoid scrutiny from regulators and the public, and preserve ticket sales and revenue.

118. Plaintiff could not have discovered the concealed facts through reasonable inquiry because the information concerned American Airlines' internal safety data, complaint history, crew practices, and enforcement failures—none of which were publicly disclosed or accessible to passengers prior to boarding.

119. Had Plaintiff known that American Airlines had a documented, internal history of alcohol-related in-flight sexual assaults and failed enforcement of its own safety policies, she would not have purchased a ticket or boarded her flight.

120. Plaintiff reasonably relied on American Airlines' safety representations

and omissions in deciding to fly and in boarding the aircraft, believing she would be protected from foreseeable risks posed by intoxicated passengers.

121. As a direct and proximate result of American Airlines' fraudulent concealment, Plaintiff was exposed to a known and preventable danger and was sexually assaulted by an intoxicated passenger whom American Airlines allowed to board, overserved, and failed to monitor.

122. American Airlines' conduct was intentional, willful, and undertaken with conscious disregard for passenger safety, entitling Plaintiff to all available compensatory and punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jane Doe, respectfully prays for judgment against Defendants American Airlines and Brett Billins as follows:

a) Compensatory damages against each Defendant in an amount to be determined by a jury;

b) Punitive damages against each Defendant in an amount to be determined by a jury;

c) Pre-judgment and post-judgment interest as allowable by law and as ordered by the Court;

d) Attorney fees' as allowable by law and as ordered by the Court;

e) Reasonable costs; and

f) Such other relief that the Court deems just and proper.

DATED: **June 9, 2026**

Respectfully submitted,
ROMANUCCI & BLANDIN, LLC

*Daisy Ayllon*

By: /s/ _____

Attorney for Plaintiff

Daisy Ayllon
dayllon@rblaw.net
Sarah Raisch
sraisch@rblaw.net
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Suite 900
Chicago, IL  60654
t.: 312.253.8618
f.: 312.458.1004
***Counsel for Plaintiff***
**FIRM ID: 35875**

## DEMAND FOR JURY TRIAL

A trial by jury is hereby demanded by Plaintiff.

DATED: **June 9, 2026**

Respectfully submitted,
ROMANUCCI & BLANDIN, LLC

*Daisy Ayllon*

By: /s/ _____

Attorney for Plaintiff

Daisy Ayllon
dayllon@rblaw.net
Sarah Raisch
sraisch@rblaw.net
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Suite 900
Chicago, IL 60654
t.: 312.253.8618
f.: 312.458.1004
*Counsel for Plaintiff*
**FIRM ID: 35875**